**207 P.2d 985**

**HALLAS v. EVANS.**

**No. 4989.**

Supreme Court of Arizona.
April 11, 1949.
Opinion Modified on Rehearing
Aug. 22, 1949.
See 208 P.2d 1153.

V. L. Hash, of Phœnix, for appellant.

Cox, Lockwood & Lockwood, of Phœnix, for appellee.

KELLY, Superior Judge.

For the second time the subject matter of the litigation between these parties has come before this court. The earlier case has been reported in 64 Ariz. 142, 167 P.2d 94, and reference is made thereto for such of the facts as are not mentioned herein. In the prior appeal two subjects were presented and passed upon—one procedural, which is of no present concern, and one as to whether the offered pleading presented a justiciable question under the form of the action before the court. Upon this latter point it may be noted that the tendered defense was not before the court on the merits, but only the pleading and its sufficiency under the law to state a defense to the action of plaintiff to quiet title to the land bought by her at tax sale after the state by its tax processes had acquired at least a complete paper title to it. In the earlier decision here the cause was remanded for trial, the opinion being, so far as it is applicable, the law of the case. The question now, after trial upon the merits, is in its essence one as to whether the facts

as disclosed are adequate to support the judgment, and whether the procedures at the trial were free from errors prejudicially affecting appellant's rights.

Plaintiff at public sale by the Board of Supervisors of tax deeded properties became the purchaser of Lot 12 of the Ward Tract of the City of Phœnix. She soon after brought this suit to establish her title against various parties who might claim adversely to her and among them this defendant was one. It may here be said that no controversy has arisen, with the single vital exception about which these proceedings revolve as set forth fully in the earlier opinion and now referred to in outline as may be necessary for clarity, as to the technical correctness of all of the proceedings of the taxing officers culminating in the sale. The lack of complaint of the steps taken in those proceedings, the tacit concessions to this effect in the pleadings and trial of this cause, together with the corresponding legal presumptions all join in supporting the correctness of this premise of regularity.

The tax sale was for the taxes of the year 1931, last half unpaid, and for the taxes of the years 1932-35, inclusive. The ultimate question presented by this litigation is whether under the peculiar circumstances of this case the assessment for taxes was lawful and the tax sale pursuant to it led into a title which can stand against the equities of the defendant's defense against it.

Defendant and her husband, then in life, had purchased three lots, Nos. 12, 21, and 22, of the Ward Tract at some time prior to 1930, and received deeds to all of the lots, separately executed by the husband and wife who were grantors, one dated in 1926 and one dated in 1930. The husband of defendant died on February 10, 1931. Defendant completed the purchase price payments, and in August of 1931 the deeds were recorded. The want of technical perfection in defendant's title is not considered as material here, for such as it was it sufficed to support her claim. Lot 21 was subsequently conveyed to others, but defendant, together with her husband until his death, retained possession of Lots 12 and 22, her home being upon Lot 12, the parcel now in controversy.

The defense interposed, coupled with a cross-complaint, was that each year during her widowhood the defendant had regularly gone to the office of the Assessor to make oath of her exempt status and to claim her exemption from taxes upon Lots 12 and 22. It is conceded that the value of both lots for this purpose was under the lower of the two minima fixed in the constitutional provision and in the statute and that so far as value alone is material the whole property was properly subject to exoneration from any tax. The claim was allowed but by an alleged error of the assessor in copying from defendant's deeds or evidences of title which he required to be displayed, the affidavit for exemption prepared

by him omitted Lot 12 from the description of the exempt property and only Lot 22 was so returned. There can be no substantial claim that there was an exercise of discretion on the part of the assessor in allowing the claim as to one lot and disallowing it as to the other. Both lots were, or neither was, subject to be exempted from taxation, and that one was returned as exempt and the other as subject to levy is corroborative of the defense of mistake on the part of the assessor in preparing the affidavit of claim. There was no basis for the exercise of a discretion in a manner so inconsistent with reason.

■ This error, due to the extraordinary circumstances attending it, was held by the earlier opinion to be parallel with or in legal effect the equivalent of payment of the tax; that the proof of it would render the subsequently laid tax void ab initio and that the assessment could not lead to the divestiture of defendant's ownership. That rule, if applicable to no other case, is now accepted for all of the purposes of this one and constitutes the legal premise for the adjudication of the opposing rights asserted. The defense to be good must show an annual claim and the same annual error in each of the years during which the tax was laid; but the rule as given in the earlier appeal does not imply that it must occur in exactly the same way each year, but it must arise from the assessor's fault. The recurrence of the same error in the same form arose from copying into each annual affi-

davit of claim from his own recorded copy of the first one made; but his perpetuation by negligence of his own earlier mistake is within the rule.

In this appeal various assignments supported by corresponding propositions of law are made, some going to the sufficiency of the evidence to support the judgment, some that a verdict should have been directed in favor of the plaintiff, and some directed to the alleged errors of procedure during the course of the trial. It will serve no useful purpose to review them seriatum, but such of them as are decisive upon the decision of the present matter will be given attention within the larger frame of the fundamental issues.

■ It is urged that the defendant following the death of her husband was at best the owner of an undivided community interest in the property, and therefore not entitled to claim an exemption of more than half of it from taxation, that her right to claim the exemption of the other half could not mature until the title to it should be judicially decreed to her, and that the assessor had passed upon her claim as it was his office to do by denying it in part. Upon this last point there is no testimony that he made any such determination or so took the law into his own hands as to make a division of the two lots between defendant and her deceased husband's estate to exonerate one and tax the other; but to the contrary the testimony is that he allowed the claim for exemption but made

an error highly prejudicial to the defendant and an imposition upon her ignorance and illiteracy in doing so. Defendant and her husband had no children. The property was owned by the community. She was the only heir. The first law of titles is that property always has an owner. A dead man can own nothing but the ground in which his body lies, and that by fiction and ordinarily not without duration. By probate proceedings long after the taxes were laid the husband's estate was decreed to the widow. The holding of this court has been and the rule is well known that immediately upon the death the heirs are invested with title. In re Wilson's Estate, 19 Ariz. 205, 168 P. 503; Home Ins. Co. of New York v. Latimer, 33 Ariz. 288, 264 P. 103. In Johnson v. Jones, 55 Ariz. 49, 97 P.2d 933, it was held that the statute providing for the assignment of the deceased spouse's estate to the survivor takes precedence of the ordinary statutes of descent and distribution. The probate decree above referred to was not one of investiture of the title but confirmed it by the establishment of the facts upon which the investiture rested, and related back to the time of the death.

■ Without doubt the defendant could have been entitled to claim her exemption for each of the full year's taxes for the nonpayment of which the state eventually took title to her property. The case is less clear as to the taxes for the last half of the year 1931, which was the first delinquency entering into the sale. I have found no case dealing with the right of a widow to claim exemption for the year of incidence of widowhood, but there are many cases upon the parallel question of the application of the exemption statutes to churches, charitable, and like benevolent corporations, establishing their rights or fixing their liability with regard to the taxes for the year of acquisition of property theretofore under taxation, and of the application of exempting statutes to such corporations in relation to the time in the tax year that such statutes take effect. Wood v. McCook Waterworks Co., 97 Neb. 215, 149 N.W. 417, L.R.A.1915C, 125, is a fair example of them, and at the latter citation will be found a note with others. By analogy cases of those circumstances may reasonably be considered as throwing some light on the subject of the effective date of the exemption depending on the status of widowhood. The general rule is without doubt that if the tax process fixes a lien, or is complete and the tax becomes fixed, at that point in the tax year prior to the acquisition of the property, or prior to the effective date of the exempting statute, the payment of the tax is inescapable. Such divergencies as appear in the cases arise from the construction of the taxing statutes as to the precise point in the taxing year at which the tax lien becomes fixed, or the tax is finally and conclusively determined and laid.

Our statute fixes the lien of taxes upon the property as of the first Monday in January. However, the amount of the lien for taxes for the current year is ascertained and fixed and levy made some time between the first Monday in July (Sec. 73-417, A.C. A.1939) and the first Monday in September (Sec. 73-423, A.C.A.1939) of each year. Under the rationale of some of the decisions on the subject the incidence of widowhood on February 10 would not entitle the widow to assert a claim of exemption for that year in which the death occurred. But upon this point, following out the analogy, our court has held to the contrary, citing cases upon which it relied. In Territory v. Perrin, 9 Ariz. 316, 83 P. 361, 362, having to do with the collectibility of the taxes for a given year upon property sold during the year to a tax exempt owner it is said with relation to the effective date of the lien: "There can be no real or effective lien until the amount of the taxes is ascertained and assessed. 'In the nature of things, no tax or assessment can exist, so as to become an incumbrance on real estate, until the amount thereof is ascertained and determined.' Black on Tax Titles, § 189; (and other citations)." Although the court adds that the tax when completed relates back and attaches as of the lien date specified in the statute, yet the decision was that the acquisition of the title by an exempt owner prior to the completion of the levy wholly defeated the tax. While the circumstances of that case presented features not present in this we can see no essential distinction between the two. The facts actually in controversy, being the merits of the tendered defense and cross-complaint, of exempt status, the making of timely claim of exemption in each of the years involved, the error of the assessor in allowing it only in part, not by the exercise of the discretion appertaining to his office but by clerical carelessness which in its results worked a fraud upon the claimant it becomes necessary to determine whether the controversy in fact was submitted to the jury or decided consonantly with law by the court. In other words, the question becomes one whether the judgment is legally, and not alone morally and ethically, correct.

The judgment, voluminous in other aspects, is silent upon the subject of whether any claim for exemption from taxes for the year 1931 was ever made, yet it finds that the property was sold to the state for tax delinquency for the second half of that year. The question of claim of exemption for 1931 taxes was not submitted to the jury. By an unfortunate oversight the only questions propounded to the jury for their verdict on the subject in issue were, one as to whether defendant during the five-year period prior to the sale claimed her exemption (Interrogatory No. 1), and a question as to whether in 1932 she made such claim (Interrogatory No. 4). The answer to the last question alone is inadequate to sup-

port the judgment because of the 1931 tax sale, and the answer to the first implies such a claim in only one year of a vague period, there having been two "sales" to which the question might have been directed; viz., the original forfeiture to the state in 1938 and the sale to plaintiff in 1944. An affidavit for exemption from taxes must be filed on or before the first Monday of July of each year; therefore, a five-year period before either 1938 or 1944 would not include 1931 and 1932 for which years the property was sold for taxes. There is, however, some testimony in the record which would authorize the submission of the real issues to the jury and a finding upon them.

Rather than to reverse with order for judgment, the cause should go back for a new trial upon the merits; and other errors complained of, as allowance of testimony concerning defendant's tenders to the treasurer, or to the plaintiff as purchaser from the state, all post facto, will not recur. If the forfeiture to the state was lawful, and this presents the only justiciable question, a tender was unavailing; if not, it was unnecessary. In either event it is immaterial.

The judgment is reversed and the cause remanded for further proceedings not inconsistent herewith.

UDALL, STANFORD and DE CONCINI, JJ., concur.

Due to illness, the CHIEF JUSTICE did not participate in determining this appeal. Justice PHELPS announced his disqualification.