264 P.2d 831

**SIBLEY et al. v. JEFFREYS.**

No. 5689.

Supreme Court of Arizona.
Dec. 14, 1953.

Reversed and remanded for new trial.

Byrne & Green, Yuma, for appellants.

Westover & Mansfield and John H. Westover, Yuma, for appellees.

WINDES, Justice.

Suit by appellee Sid Jeffreys against appellants Harry Sibley and Phil Sibley for unlawful detainer of 120 acres of unsurveyed land belonging to the United States government. Parties will be referred to as they appeared in the trial court.

Briefly the complaint alleges that the plaintiff for over ten years last past has been in the peaceable possession of the property and that during the past four years plaintiff gave defendants permission, at their request, to enter upon the land and use a portion thereof for hog raising and limited farming; that the plaintiff by written notice terminated defendants' right of occupancy and the defendants refused to surrender possession. Defendants' answer denies that plaintiff ever was or now is entitled to the possession of the property;

·denies that they took possession with the permission of or as the result of any authority from the plaintiff or that they sought such from him. The answer affirmatively alleges that defendants took possession on their own initiative and expended approximately $12,000 in improving the same. On the issues thus framed the matter was tried before a jury resulting in verdict and judgment for the plaintiff. Upon defendants' motion for new trial being denied, defendants appeal.

Their first assignment of error, containing seven subdivisions, when reduced to its essentials is that the court erred in not granting the motion for new trial because the evidence did not legally warrant the verdict and judgment.

It is claimed that there was no evidence establishing that the plaintiff ever had possession of the property. This presents for solution the problem of what is essential to establish a possessory right to the public domain that the court will protect against an alleged intruder. The property was not enclosed nor were its boundaries well-defined. There was evidence that there was or had been a fence extending part way along the north boundary. The plaintiff owned a herd of goats which had been grazed upon this and other adjacent property for a substantial length of time. Originally one Beasley had constructed improvements consisting of small houses one-fourth of a mile south of the south boundary, which improvements had been purchased by the plaintiff. Stock fences and

two wells with pumps were near the houses. Plaintiff testified he had by means of chopping ax cleared some 15 or 20 acres and that the defendants knew he was claiming occupancy of the land. Also, plaintiff testified that defendants requested and were granted permission to occupy the land.

The test of possession seems to depend upon whether one is in the occupancy of land with the intent to control it. Restatement, Torts, Volume 1, Section 157. The comment under this section defines occupancy as "such acts done upon the land as manifest a claim of exclusive control thereof and indicate to the public that he who has done them has appropriated the land." Most of the decisions upon the question of what does or does not amount to possession of unenclosed land arose under the issue of adverse possession of privately owned land, but there appears no logical reason for a different test of what may be legally sufficient to constitute the degree of control that will meet the requirements of possession in the case before the court. There are many cases upon the subject and some conflict in the authorities, but we think the proper rule is announced in Sheldon v. Mull, 67 Cal. 299, 7 P. 710, wherein the court said, "Actual possession of land may be had without fences or inclosure." See also Myers v. Hatler, 121 Or. 332, 254 P. 355; Webber v. Clarke, 74 Cal. 11, 15 P. 431. We believe that there was sufficient evidence from which the jury could find that the

plaintiff was in possession of the property at the time the defendants moved thereon.

There is a sharp conflict in the evidence as to whether defendants asked and secured permission from the plaintiff to occupy the property. Plaintiff contends defendants asked for such privilege and it was granted subject to termination at the will of plaintiff. This is disputed. On the assumption that such permission was given (and the jury could have found such fact), plaintiff contends the relationship of landlord and tenant resulted and that consequently under the familiar rule that a tenant cannot dispute the landlord's title these defendants are estopped to deny plaintiff's right of possession. We do not think plaintiff can invoke this rule. The nature of a possessory right to public domain is well stated in Missionary Society of M. E. Church v. Dalles City, 107 U.S. 336, 2 S.Ct. 672, 678, 27 L.Ed. 545, as follows:

"* * * All persons, therefore, who settled upon the public lands acquired no rights thereby as against the government. They were merely tenants by sufferance. The most they could claim was the right of actual occupancy as against other settlers. Such an occupant could yield his right of actual possession to another settler, but he could convey no other interest in the land. If he abandoned the land and another settler occupied it, the former lost all right to the possession. If he transferred the possession to another and the transferee abandoned the land, the first possessor could claim no right in the land unless he again took actual possession. In short, the settler had no right as against the government, and no rights under the laws of the United States as against any one else to the possession of the land in his actual occupancy, except and only so long as such occupancy continued."

We recognize there is authority for invoking this rule of estoppel when there actually exists a lease between parties and the lessee has recognized the validity of lessor's possessory right by the payment of rent for the use of the premises, Shy v. Brockhause, 7 Okl. 35, 54 P. 306, but we do not think that one having such possessory right who gratuitously delivers the same to another—relinquishes the possession without consideration—creates such a relationship of landlord and tenant as will estop the one to whom such relinquishment is made from questioning the original right of possession. The trial court was therefore correct in requiring the plaintiff to prove his right of possession at the time the defendants moved on the property.

Error is claimed in the admission and exclusion of evidence, in the giving of certain instructions to the jury, and in improper remarks of counsel in his argument.

Plaintiff's counsel propounded the following question to the defendant: "You were convicted of a felony in Luna County,

were you not, prior to May 14th, 1923, for grand larceny?" Over his objection, defendant answered in the affirmative. The general rule is that for the purpose of impeachment a showing may be made of prior conviction of a felony unless it is so remote that it cannot reasonably cast a reflection upon the witness' credibility. There is no exact yardstick to measure the time that must elapse to blot out the relevancy of such former conviction; it is largely a matter of court discretion considering not only the time element but length of imprisonment, subsequent conduct, age and intervening circumstances. 70 C.J., Witnesses, Section 1057. State v. Dillman, 183 Iowa 1147, 168 N.W. 204; Fire Ass'n of Philadelphia v. Weathered, 5 Cir., 62 F.2d 78, 79. A good statement of the rule is found in the last-mentioned case:

"It is well settled that the prior commission of a felony by a witness may be proved for the effect it may have upon his credibility, and that record proof is unnecessary where such witness on cross-examination admits the fact of his conviction. But with the lapse of time proof of this kind becomes more and more unsatisfactory and unreliable until at last it becomes wholly immaterial. * * *"

The witness attempted to explain that it was during his youth. The question shows conviction for larceny approximately 30 years ago. From all that appears, he has been a law-abiding citizen during his adult life. We do not think that such an offense committed during youth so long in the past could have any reasonable bearing on the credibility of the witness unless there is some showing that during the intervening years his conduct was such as to indicate or infer no reformation. Certainly evidence of this character is highly prejudicial before a jury and we think it was reversible error for the court to admit the same. Defendants submitted affidavits that this matter was discussed by the plaintiff's counsel in argument to the jury. Since no such evidence will be allowed on retrial, it is unnecessary to discuss this assignment.

 It is claimed that the court should have permitted witness Robinson to testify as to the boundary of the property claimed by Mr. Beasley, now deceased, predecessor in interest of the plaintiff. While there is no avowal of proof of what this witness' testimony would show, presumably it was offered to prove that the transferor of the plaintiff did not claim possession of the property in dispute. The general rule seems to be that a deceased owner's statement concerning his claimed boundaries is admissible if it appears there is no motive or reason for misrepresentation at the time the statement was made, and under certain circumstances evidence of common reputation concerning such boundaries is admissible. 8 Am.Jur., Boundaries, Sections 95 and 96. In the instant case the questions were not presented to the witness in such a manner as would enable defendants to claim error in the

court's ruling. The question submitted called for an answer as to boundary by general reputation, whereas the only source of the witness' information was from Mr. Beasley. Such meager knowledge on the part of the witness hardly qualified him to testify concerning boundary by general reputation. We think the court ruled correctly on this matter.

 The defendant Phil Sibley was asked if he knew the extent of the Beasley claim, which question he answered in the affirmative. On voir dire it developed that the only source of information upon which he based such affirmative answer was what Mrs. Beasley told him. Mrs. Beasley is still living. The court upon objection refused to permit the witness to testify concerning the boundaries upon the ground that this source of information was hearsay. This is assigned as error. The ruling was correct. Any knowledge the witness thus exhibited concerning the subject matter was clearly hearsay.

By assignment No. 3, defendants complain of the erroneous exclusion of evidence offered and proceed to consume 38 pages of brief in setting out 22 illustrations of such evidence offered and rejected. Of these the only ones specifically argued in the brief are discussed heretofore. While superficially there appears to be some merit in defendants' complaint as to some of these illustrations, yet we feel we should invoke the rule that claimed errors not argued shall be considered abandoned. We do not assume the burden of searching for reasons to say that the trial court erred. This is defendants' burden. We refuse to rule on these matters.

Defendants assign as error the giving of certain instructions to the jury. Plaintiff states in his brief that no objections were submitted to the lower court concerning the giving of these instructions, and defendants not having disputed this, we assume without searching through the record that no such objections were made. Under these circumstances defendants are not entitled to base error thereon and we refuse to consider the assignment. Rule 51, Rules of Civil Procedure, Section 21–1019, A.C.A.1939.

Reversed and remanded for a new trial.

STANFORD, C. J., and PHELPS, LA PRADE and UDALL, JJ., concur.