[Civ. No. 20750. Second Dist., Div. One. Aug. 1, 1955.]

EMMA LOOMIS RUTLEDGE, Plaintiff and Appellant, v. VERNON E. RUTLEDGE, Defendant and Appellant.

Walter H. Young for Plaintiff and Appellant.

Tudor Gairdner for Defendant and Appellant.

WHITE, P. J.—Both plaintiff and defendant have appealed from the present interlocutory judgment rendered May 12, 1954, after the second trial. The judgment after the first trial was in part that defendant pay to plaintiff $69,487, representing one-half of the net worth of the automobile business of the parties as of September 12, 1949, the date of their divorce, with interest thereon computed at 7 per cent per annum from said date; and "that, subject to the lien of this judgment Vernon E. Rutledge is the sole owner of the Rutledge Buick Company." That judgment was reversed on appeal. (*Rutledge* v. *Rutledge,* 119 Cal.App.2d 114 [259 P.2d 79].)

Without conflict, the record discloses that plaintiff and defendant had been husband and wife for over 35 years. In 1949 plaintiff commenced an action for divorce in the Superior Court of Los Angeles County. She was then induced by defendant to dismiss her California attorney and to go to Nevada for her decree. It failed to dispose of the community property, which consisted mainly of the business known as Rutledge Buick Company. The real property upon which said business was located was owned by plaintiff and defendant as joint tenants. Both the amended interlocutory judgment from which the first appeal was taken and the interlocutory judgment from which the instant appeals were taken appointed referees, directed them to sell the real property and to report to the court for confirmation, and each ordered that "the proceeds of the sale shall be divided according to law and the findings and judgment of the court."

The present judgment is, like the one considered on the former appeal, in part, a "money judgment." It awards to plaintiff $91,710.95 "as the balance due . . . on the accounting . . ." It is urged by defendant that "the Court erred in awarding her a money judgment instead of ordering the business partitioned or sold, and that such award of a money judgment was in direct contravention of the decision of the Appellate Court in *Rutledge* v. *Rutledge,* 119 Cal. App.2d 114 [259 P.2d 79]."

On that appeal from the former judgment in the instant action, Mr. Justice McComb speaking for the court, at pages 118-119, said:

"When several persons are coowners of real or personal property any one or more of the coowners may file an action for partition. It then becomes the duty of the court to partition the same and if this cannot be done without great prejudice to such owners, it is the duty of the court to cause the property to be sold and to partition the proceeds among them according to their respective interests. (Code Civ. Proc., §§ 752, 752a.)

"In the present case this rule was not followed. . . .

"As to this portion of the decree it must be reversed with directions to the trial court to cause the property to be sold in accordance with the applicable code provisions and to take a full and complete accounting.

"In the accounting between the parties the court will determine the proper amounts to charge defendant and to credit plaintiff on account of the net income earned by the business from the date of the divorce of the parties to the date of the filing of the present action, in the absence of any supplemental and/or amended pleadings. For example, if the evidence discloses that defendant has paid the deficiency tax assessed against him from the income of the business, he shall be charged with this amount in determining the net income of the business."

A supplemental complaint was filed November 4, 1953, in which the new matter included allegations of the interests of third parties in the real property; defendant's sole and exclusive possession and control of said business; defendant's collection of rents on the real property and the profits of the business and his refusal to account for them; defendant's statement to plaintiff that she will never get any part of her interest in the said business or the profits therefrom or the rentals from the said real property; and an application for the appointment of receivers to protect the property pending trial.

By his answer to said supplemental complaint, filed November 17, 1953, defendant admits that he has collected said rents and profits, alleges that he is willing and ready to account for said rentals, and that he will not account for the profits unless compelled by the court to do so; and further that "this Trial Court found and so decreed that this defendant pay plaintiff as a net return on the latter's former community interest in said business seven per cent (7%) on $69,487. As the result of the foregoing, it is unnecessary for

this defendant to account to plaintiff for the profits from said business.

". . . . . . . . . . . .

". . . that the District Court of Appeal upheld this defendant's contention that the business should be sold in the above partition action and, since a further trial of the above matter has been set for hearing on December 1, 1953, alleges that a partition sale of said business should be promptly and orderly held and that the appointment of a receiver would seriously jeopardize the interests of all parties to the above action."

Throughout the second trial, plaintiff contended that she was entitled to a full accounting for one-half of the net profits of the business and one-half of the rentals of the real property from the time of their divorce to the date of the final judgment, in addition to one-half the proceeds of the sales of the business and the real property, respectively.

Defendant consistently contended that the court had no power to take an accounting and that its power was limited by the decision on appeal to ordering sale of the real property and the business, dividing the proceeds of such sales, and awarding plaintiff 7 per cent per annum interest on her half of the proceeds of the sales from the date of the divorce to the date of the sales.

The court reserved its decision as to the amount to be awarded plaintiff as return on her capital investment so withheld from her by defendant, and proceeded to take a full accounting. The court also proceeded to take evidence on the character of the assets of the business to determine whether all or a portion should be partitioned in kind, and, if not, whether the business could be sold as a going concern, or its tangible assets sold in one or more units.

The first complaint in the instant action was filed March 28, 1950. At the first trial in February, 1952, it was stipulated by the parties that the net worth of the business was, on September 12, 1949, the date of their divorce, $138,974.01, and the court so found. No evidence was then offered or received concerning the tangible assets of the business. During the accounting, in the second trial, however, it developed without conflict that such stipulated value of the business was the then book value and included nothing for either the franchise or the good will, both of which were very valuable; that, since the divorce in 1949, defendant had withdrawn from the business $549,291.45, and, after the first trial, he had

withdrawn from the business in addition to his salary of $1,000 monthly, for which admittedly no work was done by him, the sum of $86,000 in cash, $70,000 thereof on May 2, 1952, and $16,000 thereof on October 16, 1952. At the time of the first trial, a large portion of the business assets was in cash and all automobiles, new and used, were fully paid for. At the time of the second trial there was practically no cash, all automobiles, new and used, were floored or mortgaged for their full value, and all contracts receivable had been discounted and sold.

Mr. Behrens, the general manager of Rutledge Buick Company, testified as follows:

"Q. And if this business were sold as a going business, would it bring more money than if it were sold piecemeal?

"Mr. GAIRDNER: That is objected to on the ground there is no foundation. No, I will withdraw the objection.

"THE WITNESS: I don't know, Mr. Young. I would have to—there is nothing there to sell. I don't know. I couldn't answer that.

"Q. BY MR. YOUNG: You say there is nothing there to sell. Do you mean by that——

"A. I mean that the majority of things like cars, and used cars, surely there is parts there, and there is more mechanics' tools out in back which I do not imagine have any value at all, unless somebody can use them, and if they could not use them they would be without value.

"Q. Without the $85,000 item the debts of the business now exceed the assets, is that right?

"A. Oh, my, yes.

"Q. And from your knowledge of the business, the sale of those assets would not bring enough to pay the debts, is that right?

"A. No, I would say not."

Mr. Behrens and the office manager, under the direction of defendant, had from some time in 1952 up to the time of the second trial in December, 1953, added to the actual cash in bank the sum of $85,312.66 to procure the figure shown by their monthly reports to the Buick Company as the cash in bank. The defendant testified that he had spent some of the money traveling and the balance of it had been lost gambling in Nevada, Europe, and other places, that he then had only $5.00 and it had been borrowed from his lawyer.

The interlocutory judgment from which this appeal was

taken was filed May 12, 1954. June 10, 1954, defendant was adjudged a bankrupt by the United States District Court for the Southern District of California, Central Division. Since that time, the real property and the physical assets of the business have been sold under orders of said District Court. At the oral argument on the instant appeal it was stated that defendant had not communicated with his own attorney for a year and his whereabouts during all of that time had been and were then unknown.

The record of the first trial of the instant action is devoid of any evidence as to the nature of the assets of the business as of the date of the divorce, at the time of that trial, or at any other time. It is not disclosed by that record, as it is by the record on the appeal now engaging our attention, that the working capital of Rutledge Buick Company was turned over many times each year, that there were frequent and complete liquidations of tangible properties (except obsolescent parts and old tools of little or no value) and usually reinvestment of funds in other automobiles.

■ There was no showing on the first trial, as there was on the second, that practically all the salable tangible assets belonging to the business at the time of the divorce had been sold by the defendant, that the cash received therefor had been removed from the business, and that the business could not be sold for enough to pay the debts of the defendant contracted by him in connection with said business after the first trial.

Defendant's entire argument for reversal of the judgment now being considered is based upon the alleged law of the case and the only authorities cited by him are *Rutledge* v. *Rutledge, supra,* and section 752 of the Code of Civil Procedure, neither of which has any application to the facts now before the court.

We are satisfied that the doctrine of the law of the case does not apply in the instant appeal. ■ The rule in question requiring both trial and appellate tribunals to follow the rules laid down upon a former appeal is inapplicable where the evidence on the second appeal is substantially different in a material respect and the particulars in which it is different are pointed out. (*Allen* v. *Bryant,* 155 Cal. 256, 259 [100 P. 704]; *Haase* v. *Central Union High School Dist.,* 27 Cal. App.2d 319, 321, 326 [80 P.2d 1044].) ■ Neither should the doctrine be adhered to when the application of it results in a manifestly unjust decision (*England* v. *Hospital of Good Samaritan,* 14 Cal.2d 791, 795 [97 P.2d 813]).

Plaintiff, at the oral argument, because of the bankruptcy and disappearance of the defendant, abandoned her appeal. For that reason we have not considered whether or not a proper division of the profits of the business, under the circumstances here shown, has been made.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.