305 P.2d 427

**Harry SIBLEY and Phil Sibley, Appellants,**

**v.**

**Sid JEFFREYS, Appellee.**

**No. 6003.**

Supreme Court of Arizona.

Dec. 18, 1956.

John A. McGuire, Yuma, and Herbert Mallamo, Phoenix, for appellants.

Westover & Mansfield, Yuma, for appellee.

STRUCKMEYER, Justice.

This is a subsequent appeal to Sibley v. Jeffreys, 76 Ariz. 340, 264 P.2d 831. Therein, because of the erroneous admission of prejudicial evidence, this court reversed a judgment finding the Sibleys guilty of unlawful detainer. At the retrial the jury again returned a verdict in favor of Jeffreys. The lower court denied the Sibleys' motion for a judgment notwithstanding the verdict and this second appeal followed.

The action was commenced to obtain restitution of a certain parcel of land consisting of approximately 120 acres of unsurveyed public domain in Yuma County, Arizona. Count two of the complaint upon which judgment was entered alleges that for more than 10 years Jeffreys has been and now is in peaceful and quiet possession of the land in dispute, that the Sibleys asked permission of Jeffreys to enter upon

and use it for the purpose of raising hogs and farming, that permission was granted, but the Sibleys have asserted a claim in opposition to Jeffreys' right of possession and refuse to vacate. It should immediately be stated that many of the material facts are hotly disputed, but that for the purpose of this opinion all the facts will be taken in the light most favorable to Jeffreys in whose favor the jury's verdict was returned.

The land in question lies close to the east bank of the Colorado River near the City of Yuma, Arizona, and can best be described as bottom lands which until very recently were covered with a growth of mesquite and brush indigenous to that area. On the 15th of September, 1941, Jeffreys purchased for $230 improvements consisting of adobe houses and corrals and certain equipment and other personal property including 71 head of goats located on what was described in the bill of sale as the "Thomas J. Beasley Holdings". The "Beasley Holdings" seemingly consisted of a tract of land belonging to the United States Government of at least 420 acres extending north and south along the east bank of the Colorado River of which the 120 acres in question was the northernmost part. To the north was a tract of deeded land known as the "Edwards Property", which south boundary was contiguous with the north boundary of the "Beasley Holdings". In March of 1947 Harry Sibley and his son, Phil Sibley, purchased the "Edwards Property" so that thereby they came into possession of the land lying to the north of the property claimed by Jeffreys. It should not be understood that the dividing north-south boundary line between the "Beasley Holdings" and the "Edwards Property" was ever definitely ascertained, at least until shortly before the second trial when engineering surveys were made. The "Beasley Holdings" were unfenced and uncultivated at the time Jeffreys went into possession except for a drift fence extending one-quarter mile in length along the approximate location of the north boundary line.

In 1941 Jeffreys moved onto the land, lived in the adobe houses, cleared some brush and grazed the goats and otherwise did incidental work about the premises. In 1944 he went to Los Angeles and stayed for approximately one year, during which time the goats were kept by an employee. He returned in December of 1945. About ten days after Jeffreys returned to Yuma the adobe houses burned down and he never lived on the property thereafter. At about the same time he abandoned his operation of the goat herd. Jeffreys testified in this respect at the first trial:

"Q. And you operated the goat herd up to what period of time? A.

The herd was in there until around '46."

During the years 1946 and 1947 Jeffreys continued to clear brush and trees on the property, although exactly where the record does not disclose. Some of the clearing of brush was on the 120 acres for which the writ of restitution is sought. While the plaintiff and his brother testified that they cut brush off 30 to 40 acres after the year 1948, they were unable to state where, testifying, "All the way from the levee to the river". This could be anywhere on the Beasley tract. Jeffreys never leveled, put in ditches, irrigated or farmed any of the disputed acreage. The brush regrew in one or two years to a height and density equal to what it had been before. In the spring of 1948 Phil Sibley came to Jeffreys and asked permission to farrow some sows on a small part of the disputed acreage and Jeffreys gave his permission to do that and also in the fall of the same year permission to put in 7 to 10 acres of barley. Thereafter, the Sibleys without further permission cleared and put in cultivation approximately 65 to 66 acres of the 120 acres by clearing off cottonwood trees, salt cedars, willows and other river bottom growth and moving dirt to grade, erecting ditches, borders, concrete pipes and headgates. Hog pens were erected and land planted to alfalfa and barley as feed for the hogs. Approximately 2½ miles of woven wire hog fence were put in and an adobe house 16 x 23 and a wooden house 10 x 12 were erected. Two wells were put down. Four years of crops were grown before Jeffreys instituted this suit for restitution of the premises.

After a detailed examination of the record before this court in the proceedings of the second trial, we are convinced that there was no evidence from which the jury could find that after the spring of 1946 Jeffreys was in possession of the 65 to 66 acres put in cultivation by the Sibleys. If Jeffreys' complete occupancy of the entire Beasley tract be conceded as of 1941, it is now clear that for nearly two years prior to the encroachment by the Sibleys on the northern portion thereof Jeffreys had stopped raising goats on the property, had stopped living on the property and was not using or occupying any of the land in dispute with the possible exception that Jeffreys may have cleared some brush as heretofore indicated.

It is Jeffreys' position, however, that the question of the sufficiency of the evidence to support a verdict in his favor was determined by this court on the prior appeal and that the court is bound by that determination as the law of the case. It is true in the original opinion, 76 Ariz. 340, 264 P.2d 831, 833, we stated:

"* * * We believe that there was sufficient evidence from which the jury could find that the plaintiff was in possession of the property at the time the defendants moved thereon."

It is likewise true that the doctrine of the law of the case is well established as controlling in this jurisdiction. In re Monaghan's Estate, 70 Ariz. 349, 220 P.2d 726, on rehearing 71 Ariz. 334, 227 P.2d 227; Hallas v. Evans, 69 Ariz. 14, 207 P.2d 985; Western Coal & Mining Co. v. Hilvert, 63 Ariz. 171, 160 P.2d 331; Miller Cattle Co. v. Francis, 38 Ariz. 197, 298 P. 631; Commercial Credit Co. v. Street, 37 Ariz. 204, 291 P. 1003; Arizona-Parral Mining Co. v. Forbes, 16 Ariz. 395, 146 P. 504. However, we are not convinced that it should govern in this instance.

■ While some courts insist that the doctrine should be applied at all times, 3 Am.Jur. 547, others create an exception where it appears the former decision was palpably erroneous. An abundance of authority from many jurisdictions sustains this latter principle. For example the Supreme Court of California sixteen years ago rejected the doctrine that the law of the case absolutely precluded re-examination of a manifestly unjust decision.

"* * * The doctrine of the law of the case is recognized as a harsh one (2 Cal.Jur. 947) and the modern view is that it should not be adhered to when the application of it results in a manifestly unjust decision. United Dredging Co. v. Industrial Acc. Comm., 208 Cal. 705, 284 P. 922. However, it is generally followed in this state. But a court is not absolutely precluded by the law of the case from reconsidering questions decided upon a former appeal. Procedure and not jurisdiction is involved. Where there are exceptional circumstances, a court which is looking to a just determination of the rights of the parties to the litigation and not merely to rules of practice, may and should decide the case without regard to what has gone before. Messinger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152; Seagraves v. Wallace, 5 Cir., 69 F.2d 163; McGovern v. Eckhart, 200 Wis. 64, 227 N.W. 300, 67 A.L.R. 1381." England v. Hospital of Good Samaritan, 14 Cal.2d 791, 97 P.2d 813, 814.

Among the more recent cases of like import see Rutledge v. Rutledge, 134 Cal. App.2d 689, 286 P.2d 429; Beverly Beach Properties v. Nelson, Fla., 68 So.2d 604, 41 A.L.R.2d 1071; Coleman v. Ziegler, Mo., 248 S.W.2d 610; Burke v. Pittsburg Limestone Corp., 375 Pa. 390, 100 A.2d 595.

We are of the opinion that a ruling on one appeal if manifestly or palpably erroneous is not to be treated as conclusive on subsequent appeal of the same case. We are of this view because courts exist but for the ultimate purpose of establishing justice. If we adhere rigidly to an arbitrary principle of convenience and declare as our decision that which is clearly wrong and which we know to be wrong, then we are defeating the purpose for which courts exist. Moreover, we are in effect saying that it is of no consequence to us that justice has not in the end prevailed.

In considering the Sibleys' contention that the court erred in overruling their motion for judgment notwithstanding the verdict, we think it appropriate to emphasize the basic law which we believe controls the decision in this case. As was pointed out the title to the land in dispute is in the United States Government. Hence the conflict is between two individuals, each claiming the right of occupation. The rule of law governing has been clearly pronounced by the Supreme Court of the United States in Missionary Society of Methodist Episcopal Church v. Dallas City, 107 U.S. 336, 2 S.Ct. 672, 678, 27 L.Ed. 545, 548:

"* * * The title was in the United States, subject to the possessory Indian title to portions of the territory, and there was no law by which any person or company could acquire title from the government. All persons, therefore, who settled upon the public lands acquired no rights thereby as against the government. They were merely tenants by sufferance. The most they could claim was the right of actual occupancy as against other settlers. Such an occupant could yield his right of actual possession to another settler, but he could convey no other interest in the land. If he abandoned the land and another settler occupied it, the former lost all right to the possession. If he transferred the possession to another and the transferee abandoned the land, the first possessor could claim no right in the land unless he again took actual possession. In short, the settler had no right as against the government, and no rights under the laws of the United States as against any one else to the possession of the land in his *actual* occupancy, except and *only so long* as such occupancy continued." [Italics ours.]

It is clear that Jeffreys' rights to possession must be founded on his continued actual occupation of the land. So long as he did actually occupy it, he could not be dis-

possessed by the Sibleys. However, when he terminated his actual occupancy his rights founded thereon also terminated. Nor do we think that Jeffreys' subjective intention to hold possession, if such be conceded, unaccompanied by any acts during the years 1946 and 1947 which manifested a claim of exclusive occupancy is sufficient to establish a possessory right. What Jeffreys did there determines what his rights are. Any other ruling would be contrary to sound public policy because it would permit the holding of valuable lands for indefinite periods of time by intention alone.

■ Because it now clearly appears that Jeffreys in seeking a writ of restitution to recover the possession of the 120 acres in question had by reason of his nonoccupancy no right to the possession of the land, he had no right upon which the relation of landlord and tenant could be founded and no right to give or forbid the use or occupation of the acreage put into cultivation by the Sibleys. The occupation by Sibleys of a portion of this land by permission of Jeffreys added nothing to Jeffreys' rights and consequently nothing of which he could be deprived.

For the foregoing reasons the court erred in failing to grant defendants' motion for judgment notwithstanding the verdict and accordingly the court below is ordered to enter judgment in favor of the defendants finding them not guilty of forcible detainer and for their costs.

LA PRADE, C. J., and UDALL, J., concur.

WINDES, Justice (dissenting).

I am unable to agree with the majority in the decision of this case. In the former appeal we decided after thorough and competent briefs and argument that there was sufficient evidence to take to the jury the question of whether plaintiff-appellee Jeffreys had possession of the property in dispute at the time defendants-appellants Sibley took possession. The general rule of law applicable herein and admittedly heretofore followed in this jurisdiction is clearly set forth in 3 Am.Jur., Appeal and Error, section 985, as follows:

"It may be stated generally that a court of review is precluded from agitating questions which were propounded, considered, and decided on a previous review. The decisions agree that as a general rule, when an appellate court passes upon a question and remands the cause for further proceedings, the question there settled becomes the 'law of the case' upon a subsequent appeal, provided the same facts and issues which were determined in the previous appeal are involved in the second appeal."

It is not stated and could not possibly be stated that there was any substantial difference in the evidence presented at the first and second trials. If there be any difference there is' stronger evidence in Jeffreys' favor on the issue of possession than in the first trial. For instance, as appears from the opinion on the first appeal he had cleared the brush from 15 or 20 acres, while as appears from the majority opinion herein, at the time of the second trial he showed he had cleared the brush from 30 or 40 acres.

There is no dispute in this court between the parties litigant that the "law of the case" doctrine as it has until now existed in this jurisdiction would require submitting the question of possession to the jury unless changes in the evidence at the second trial would prevent. Appellants in their brief say:

"If the evidence in this trial were the same as that in the first trial, then it would follow that the Court should submit the question of possession to the jury."

Notwithstanding this situation the majority have assumed to say that both appellants and appellee are wrong and in the middle of the litigation proceed to upset all the former pronouncements of this court on the subject. The appellee will justifiably be shocked by being blasted out of court on a matter that was never debated nor briefed by either side.

No one asked this court to re-examine and change the law and I do not believe a supreme court on its own motion should surprise litigants by upsetting the well established law as heretofore announced. This is especially true when all interested parties are apparently content that the law be not changed. The basis for changing this law is that the former decision is manifestly erroneous. I cannot even agree with this proposition. The question was thoroughly briefed and argued on the first appeal and while there is room for disagreement as to whether the first opinion is or is not correct, it certainly is not manifestly erroneous.

This case should be decided on other assignments of error with the question of the right to have the jury pass upon appellee's possession established by the former decision.

PHELPS, J., concurs in the foregoing dissent of WINDES, J.