403 P.2d 936

Sam R. CLARK, Cochise County Assessor and
F. C. Alexander, Cochise County
Treasurer, Appellants,

v.

CITY OF TUCSON, a municipal corporation,
Appellee.

F. C. ALEXANDER, Cochise County
Treasurer, Appellant,

v.

CITY OF TUCSON, a municipal corporation,
Appellee.*

Nos. 2 CA–CIV 49, 2 CA–CIV 50.

Court of Appeals of Arizona.

July 8, 1965.

Richard J. Riley, Cochise County Atty., Lloyd C. Helm, former Cochise County Atty., Bisbee, for appellants.

Calvin Webster, City Atty., Dwight E. Eller, Asst. City Atty., Tucson, for appellee.

MOLLOY, Judge.

We have before us two appeals which present the identical legal question. Both involve the question of whether land owned by the plaintiff, City of Tucson, lying within the boundaries of Cochise County is exempt from ad valorem taxes imposed in Cochise County.

The plaintiff, City of Tucson, prevailed in both actions in the trial court. In the one it received a writ of mandamus ordering Sam R. Clark, Cochise County Assessor and F. C. Alexander, Cochise County Treasurer to strike the name of the City of Tucson from the tax assessment rolls of Cochise County and in the other it received a permanent injunction restraining F. C. Alexander, Cochise County Treasurer, from proceeding to sell any lands of the petitioner from delinquent taxes.

The cases are presented on appeal under an agreed statement of facts, among which are: that the land in question was purchased by monies received from the sale of water revenue bonds; that the land was purchased to secure water producing acreage to furnish water to the City of Tucson to be distributed by it as a public utility; that at the time of the filing of the action the property was not being used for the purpose of producing water but rather was being advertised for bids in an effort to lease the property to private individuals.

The judgment of the lower court was based upon Art. 9 § 2 of the Constitution of Arizona, which insofar as pertinent to this action, reads as follows:

"There shall be exempt from taxation all federal, state, county and municipal

* These appeals were filed with the Arizona Supreme Court and assigned that court's Nos. 7823 and 7824. The matter was referred to this court pursuant to § 12–120.23 A.R.S.

property. * * * This section shall be self-executing."

The only contention made on appeal is that the lower court erred in granting an exemption for the reason that when a municipality acts as a public utility it is acting in a "proprietary" capacity, and, as such, is subject to taxation despite the above quoted section of the Constitution.

The appellants rely upon the cases of City of Phoenix v. State of Arizona, 53 Ariz. 28, 85 P.2d 56 [1938], and City of Phoenix v. Bowles, 65 Ariz. 315, 180 P.2d 222 [1947]. Neither of these cases is in point. Both were concerned with excise taxes, and the opinions written in each make it clear that the subject constitutional exemption was not applicable for that reason only.

The appellants also rely upon Zangerle v. City of Cleveland, 145 Ohio St. 347, 61 N.E.2d 720 [1945] and the Atlantic & N. C. R. R. Co. v. The Board of Commissioners of Carteret County, 75 N.C. 474 [1876].

Zangerle is not in point for the reason that the Ohio constitutional exemption pertains to "public property used exclusively for any public purpose." Moreover, Zangerle has been overruled in Ohio by City of Cleveland v. Board of Tax Appeals, 167 Ohio St. 263, 147 N.E.2d 663 [1958], in which case the court held that even though the operation of a public transportation system by the City of Cleveland was "proprietary" in nature it was nevertheless for a "public purpose" and hence the property so used was exempt under the Ohio Constitution.

The Carteret County case is not in point for the reason that it pertained to the property of a railroad company, the stock of which was owned in part by the State of North Carolina, rather than to property actually owned by the state itself. The constitutional provision in North Carolina is comparable to our own, in that it has no qualification as to the use which must be made of the property to be exempted. Art. 5 § 5 of the North Carolina Constitution reads:

"Property belonging to the State, or to municipal corporations, shall be exempt from taxation."

The North Carolina Supreme Court has vacillated as to whether the dictum of the Carteret County case was good law. The same was repudiated in Town of Andrews v. Clay County, 200 N.C. 280, 156 S.E. 855 [1931], in which the court held that a site owned by a town in another county for the generation of electricity was exempt from taxation under the constitutional provision, even though there was a statute limiting exemption from the tax to property held "for public or school purposes." The court held that the constitutional provision was "self-executing" and that the legislature could not impose restrictions upon the exemption granted:

"The provision in the first clause of section 5 article 5 of the Constitution * * * is self-executing, and by its own force, without the aid of legislation, exempts such property from taxation * * * because of its ownership, and without regard to the purpose for which such property was acquired and held by the corporation. * * * The language of the constitutional provision is so clear and unambiguous that there is no room for judicial construction."

Since then it has been held in North Carolina that property acquired by a municipality at a tax sale and not used for a public purpose, but rather rented for income was not exempt under the constitutional provision. Town of Benson v. Johnston County, 209 N.C. 751, 185 S.E. 6 [1936]. In this case the court is talking about property "devoted to a public use, or to some purpose or function of government" as being that to which its constitutional tax exemption is limited. Even in North Carolina, the purchase of land to provide water for a public utility would probably be considered land devoted to a public use. In Mallard v. Eastern Carolina Regional Housing Authority, 221 N.C. 334, 20 S.E. 2d 281 [1942], the court held that the acquiring of land for the construction of

housing for low income families is a "public purpose in the exercise of an essential governmental function," and thus tax exempt under the constitutional provision above quoted.

There seems to be no authority for the proposition of law advanced by the appellants that a constitutional tax exemption pertaining to municipally owned property should be limited to that held in a "governmental" capacity as opposed to a "proprietary" capacity. The distinction between "governmental" and "proprietary" functions of a municipality is found in tort cases in which courts were struggling with the doctrine of governmental immunity. The distinctions made were often illogical and would present a very unsatisfactory basis for determining the taxability of municipal property. For instance, in Dillow v. City of Yuma, 55 Ariz. 6, 97 P.2d 535 [1940], and the line of cases cited therein, it is held that the maintenance of sidewalks is a proprietary rather than a governmental function. Following this to its logical conclusion, if we adopt the appellants' premise, the sidewalks of the City of Tucson would have to be taxed at their actual cash value.

We believe that the Rubicon has already been crossed as far as Arizona is concerned and that property owned by a municipality is exempt from ad valorem taxes regardless of the use made of the property. Maricopa Co. v. Fox Riverside Theatre Corp., 60 Ariz. 260, 135 P.2d 513 [1943]. It is true that in this case there was no contention made that the constitutional exemption should be limited to property used for "governmental" purposes. However, it is obvious that the property held to be exempt in that case was used for a "proprietary" purpose—the leasing of a theater to a private corporation.

When a constitutional provision is clear, judicial construction is neither re-

quired nor proper. Bohannan v. Corporation Commission, 82 Ariz. 299, 313 P.2d 379 [1957].

The judgments of the lower court are affirmed.

KRUCKER, C. J., and HATHAWAY, J., concurring.