761 P.2d 1102

**CITY OF ELOY,**
**Crossclaimant–Appellee,**

v.

**PINAL COUNTY, Pinal County Treasurer, Crossdefendants–Appellants.**

**Nos. 1 CA–CIV 9520, 1 CA–CIV 9570.**

Court of Appeals of Arizona, Division 1, Department C.

May 19, 1988.

Review Denied Oct. 12, 1988.

Lewis and Roca by Peter D. Baird, David M. Bixby, Susan M. Freeman, Craig A. Morgan, Phoenix, for City of Eloy.

Roy A. Mendoza, Pinal Co. Atty. by Stephen M. Kemp, Chief Civ. Deputy, Florence, for Pinal County and Pinal County Treasurer.

OPINION

CORCORAN, Judge.

Juanita and James Dawdy filed suit pursuant to A.R.S. § 42–451 to foreclose their redemption right on 9 parcels of property they claimed to have purchased by paying delinquent taxes to the Pinal County Treasurer. The Dawdys named as defendants City of Eloy, Pinal County and its Treasurer, and all other parties they found to have an interest of record in any of the properties.

The City of Eloy, a municipal corporation located in Pinal County, answered, counterclaimed, and crossclaimed against the Pinal County Treasurer regarding the piece of property listed in the Dawdys' complaint as Parcel 3. The city alleged that Parcel 3 was a subdivision lot that had been purchased by the city before the Dawdys had acquired their supposed interest in the property, that liens for unpaid taxes assessed and levied against the property were extinguished upon the city's purchase of the property, and that the Pinal County Treasurer therefore could not have given any interest in the property to the Dawdys. Alternatively, the city alleged that because it had acquired the property pursuant to the Slum Clearance and Redevelopment

Law, A.R.S. § 36–1471(2) (the statute), the property became exempt under A.R.S. § 36–1486 from any levy, sale, execution, or other judicial process including judicial or administrative foreclosure based upon the ownership of any lien for unpaid real property taxes.

The city filed a motion for summary judgment concerning Parcel 3 and recited the following facts. In the late 1960s and early 1970s, a series of corporations attempted to develop a Toltec/Arizona Valley subdivision in an area of Pinal County adjacent to, and eventually annexed by, the City of Eloy. The project was plagued with problems and did not succeed. Ultimately, the corporations that were attempting to develop the area slipped into financial miasma, and the development declined into physical decay.

During this period, Pinal County imposed various property taxes on lots in the new development. Many of these taxes remained unpaid and eventually became delinquent. On February 28, 1980, the county sold a certificate of purchase to the State of Arizona for unpaid property taxes assessed during 1978 in the amount of $22.59 on the subject property of this lawsuit.

Eventually the city decided to take action concerning the deteriorated subdivision. On August 13, 1984, the mayor and city council adopted Resolution 84–249, declaring an area within the city, including the lot in question, to be a "blighted area" in need of redevelopment within the meaning of the statute. On November 11, 1984, the mayor and the city council adopted Resolution 84–259, establishing a redevelopment plan for that area. Acting in accordance with its authority under the statute, the city then acquired title to 2,654 subdivision lots within the redevelopment area, including the lot in question, under a purchase agreement between Toltec Real Estate Corporation and the city executed on January 15, 1985.

The city's acquisition of title was properly recorded in the office of the Pinal County Recorder on January 17, 1985. Despite the city's record title, the Pinal County Treasurer sold and assigned the certificate of purchase to the lot in question to James Dawdy, on March 22, 1985, for a total purchase price of $57.74.

The trial court ruled in the city's favor on the motion for summary judgment, finding that § 36–1486 precludes the enforcement of tax liens while the property is owned by the city. Additionally, the trial court made a broader ruling that tax liens on the property were extinguished by merger into the title when the city purchased the property. The trial court entered formal judgment, with findings pursuant to rule 54(b), Arizona Rules of Civil Procedure, quieting title to the property in the city and barring both the Dawdys and the county from claiming any right or title to the property. The county alone has appealed the trial court's ruling.

The county asks us to find that the trial court erred in determining that liens for delinquent property taxes were extinguished after the city's acquisition of the property through the doctrine of merger, under the rationale of *State ex rel. Peterson v. County of Maricopa*, 38 Ariz. 347, 300 P. 175 (1931). Should we determine that the liens were not extinguished, the county asks us to find that the trial court erred in ruling alternatively that § 36–1486 would preclude the enforcement of liens for delinquent property taxes while the land is owned by the city.

In determining whether the liens for delinquent property taxes were extinguished when the city acquired the property, we start by examining *Peterson*. In that case, the State of Arizona had acquired title in fee to property through foreclosure of its mortgage on the property. The state sought a declaratory judgment against Maricopa County that any tax lien that might have existed against the property merged in the fee title when the state became the owner. The issue, one of first impression in the state, was whether taxes, duly assessed and levied against property in private ownership and delinquent at the time the state foreclosed its mortgage and purchased the property at a judicial sale, are a lien upon the property after its pur-

chase. The state had purchased the property before it had been acquired by any third party at a tax sale; therefore, the court characterized the situation as

> simply a contest between the right hand of the state, in its capacity as holder of the legal title through a foreclosure sale, and its left hand, in its capacity as tax gatherer, both on its own behalf and that of its subordinate agencies, the county and various school districts or various municipalities.

38 Ariz. at 349, 300 P. at 175.

The *Peterson* court stated that two opposing rules are applied by different courts on this issue. The first rule is that "a previously existing tax lien becomes merged in the legal title when the property affected is acquired by the state"; the second is that unless the property is acquired for a strictly governmental purpose, "the tax lien still persists, though its enforcement may be suspended." 38 Ariz. at 350–51, 300 P. at 176. The court chose the first rule, adopting the following reasoning:

> The exemption granted to the property of the United States is perhaps compulsory; that to the state, all counties, towns, cities and school districts arises from public policy, which repudiates, as being utterly futile, the theory of the state taxing its own property in order to produce the funds with which to operate its own affairs. To tax it would merely require and render it necessary to levy new taxes to meet the demand of those already laid; that the public would thus be taxing itself to produce the money with which to pay to itself the taxes previously assessed, thereby benefiting no one except the officers employed to collect and disburse such revenues, whose compensation would merely serve to increase the burden of this useless and idle ceremony. The object of taxing property is to produce the revenues with which to conduct the business of the state; it is entirely inconsistent with our theory of government for the property of

the state to be taxed, or sold for taxes, in order to produce the money to be expended by the state. Such a procedure is but taking the money out of one pocket and putting it in the other. Another consideration, which should not be overlooked, is that if public property, that is to say, property owned by the state, is to be burdened with a tax lien, the public might lose it entirely through oversight or carelessness of its agents in failing to pay the taxes when due, and allowing the same to be sold and the title pass to third parties.

38 Ariz. at 350, 300 P. at 175–76, quoting from *State v. Locke*, 29 N.M. 148, 219 P. 790 (1923).

After considering both rules, the court determined that general principles of public policy are best served by adherence to the first rule as long as the tax lien has not become a vested right in the hands of a third party prior to the state's acquisition of the property. Having found that the state acquired its title before the tax title to the property had been purchased at a tax sale by a third party, the court ruled that the lien for preexisting taxes merged in the title acquired by the state in the mortgage foreclosure proceedings.[1]

■ The county argues that *Peterson* has no application where, as here, the property was acquired through a tax sale by a third party—the Dawdys. The lack of merit to this argument is readily apparent since *Peterson's* exception to the merger rule applies only when a third party has purchased the property at a tax sale *before* the state acquires title. It is undisputed in this case that the city obtained title and promptly recorded its deed before the Dawdys paid the delinquent taxes and obtained any claim to the property.

Another argument made by the county is that the merger rule of *Peterson* should be limited to occasions when the state acquires property; that it should not be applied when other governmental entities,

---

1. The county points out that some jurisdictions refuse to hold that existing tax liens are extinguished when the state or other governmental bodies acquire property. *See, e.g., Teachers Retirement Sys. v. City of Atlanta*, 249 Ga. 196, 288 S.E.2d 200 (1982); *Madison County v. School District*, 148 Neb. 218, 27 N.W.2d 172 (1947). However, these cases are not persuasive in view of the clear position on this issue taken by our supreme court in *Peterson*.

such as cities, acquire property. The county points out that cities are mere political subdivisions of the state and are therefore inferior to the state. *See City of Tempe v. Board of Regents*, 11 Ariz.App. 24, 25, 461 P.2d 503 (1969). The county argues that this is sufficient reason not to extend the rule announced in *Peterson* to this situation, where a city acquires property which is encumbered with tax liens. The thrust of its argument is that such an extension would permit the smaller portion of the body politic embodied in a city to serve its interests by extinguishing taxes owed a larger segment against the larger segment's will; this, the county argues, is politically unreasonable. The county, however, has not cited any case in which a court has held that the merger doctrine applies when the state acquires property but does not apply when one of the state's subdivisions acquires the property, nor have we found any court which draws that line.

The same public policy reasons articulated in *Locke* and embraced by the Arizona Supreme Court in *Peterson* for extinguishing prior tax liens through the doctrine of merger when the state acquires property are equally valid when a political subdivision of the state acquires property. The Arizona Constitution exempts from taxation not only property owned by the state itself, but property owned by its cities and counties. Ariz.Const.art. 9, § 2. As noted in *Locke*, the tax exemption for property owned by the state, counties, and municipalities arises from public policy that repudiates as an act of futility the theory of the state taxing its own property in order to produce the funds with which to operate its own affairs. Obviously, in this context, counties and cities are looked upon as part of the state rather than as inferior governmental bodies, as they may be considered in other contexts. This rationale for exempting state property from the levy of taxes led the courts in both *Locke* and *Peterson* to conclude that property acquired by the state becomes freed of liabilities for taxes previously assessed and unpaid. We therefore conclude that the same rule applies when a city acquires the property.

Courts adopting the rule that tax liens are extinguished apply it not only when property is acquired by the state, but also when it is acquired by political subdivisions of the state. The Supreme Court of California has held that a city's condemnation of land upon which the state held tax liens acted to merge the tax liens with the title to the property and extinguish them. *Smith v. City of Santa Monica*, 162 Cal. 221, 121 P. 920 (1912). Similarly, the Texas courts have held that when property is acquired by a city or a county, all preexisting tax liens merge with the title. *Childress County v. State*, 127 Tex. 343, 92 S.W.2d 1011, 1016 (1936); *City of Marlin v. State*, 205 S.W.2d 809, 811–812 (Tex.App. 1947). The Washington Supreme Court has noted its acceptance of the rule that when property is acquired by the state, county or city existing tax liens are discharged or merged in the title acquired by the public body. *Halvorsen v. Pacific County*, 22 Wash.2d 532, 156 P.2d 907, 908 (1945). The Appellate Court of Illinois indicated that it was siding with the majority of jurisdictions holding that "when a municipal corporation acquires property after a lien for unpaid taxes has accrued, the preexisting lien is extinguished and unenforceable, and any subsequent tax sale is rendered void." *In re County Collector*, 79 Ill.App.3d 151, 34 Ill.Dec. 717, 718–719, 398 N.E.2d 392, 393–394 (1979). *See also* Annotation, *Acquisition by State or Other Governmental Body of Title to Land, Otherwise than at Tax Sale, as Affecting Prior Tax Lien on Land, or Validity of Sale for Such Taxes*, 158 A.L.R. 563 (1945 & Supp.1987) (the majority of cases have held that preexisting tax liens are extinguished in this situation).

For the foregoing reasons, we are satisfied that the rationale of *Peterson* would apply when a city has acquired title to land to extinguish preexisting tax liens. We will comment briefly, however, on several other points made by the county.

■ The county argues that the merger doctrine should not apply when the city has not acquired the property for a permanent public purpose. Many courts that have

held tax liens are extinguished have applied this rule when the property was acquired for a permanent public purpose. *See, e.g., Smith v. City of Santa Monica; In re County Collector.* As we noted previously, however, *Peterson* expressly rejected the distinction between property held for a public purpose and property held for other purposes. This position is consistent with the rule in Arizona that government land is exempt from taxation regardless of the purpose behind its acquisition. *Clark v. City of Tucson,* 1 Ariz.App. 431, 433, 403 P.2d 936, 938 (1965).

The county also argues that the merger doctrine is incompatible with statutes authorizing the county treasurer to collect taxes due to the state and its political subdivisions, A.R.S. § 42–341, and to enforce liens for delinquent taxes, A.R.S. § 42–381. We find no conflict because the county treasurer has no duty to enforce a tax lien that no longer exists because it has been extinguished.

The county further argues that the merger doctrine conflicts with the Arizona Supreme Court's later decision in *Hallas v. Evans,* 69 Ariz. 14, 207 P.2d 985, *modified,* 69 Ariz. 77, 208 P.2d 1153 (1949). In that case the court indicated that if the tax process fixes a lien, payment of the tax is inescapable. We find no conflict between *Peterson* and *Hallas.* In *Hallas,* the court was discussing tax exemptions for "churches, charitable, and like benevolent corporations." 69 Ariz. at 18, 207 P.2d at 984. These exemptions are granted solely through statutes, while tax exemptions for governmental entities are based not only on statute but also on the public policy reasons already discussed.

The county points out that even the state must pay preexisting taxes before it condemns property for public purpose. The county reasons that this obligation would apply when a political entity acquires property pursuant to the Slum Clearance and Redevelopment Law. The county, however, has provided no authority to support its contention that the merger doctrine does not apply when property is acquired by condemnation. Moreover, we note that many of the courts ruling that preexisting tax liens are extinguished do so in cases in which property was acquired by condemnation. *See, e.g., Smith v. City of Santa Monica.*

As a final point, the county suggests that because A.R.S. § 36–1488.01 provides for taxation of property in a redevelopment plan, the legislature did not intend for the doctrine of merger to apply to property obtained under the redevelopment statute. We find that this issue was not raised in the trial court; therefore, we decline to consider it for the first time on appeal. *See Cote v. A.J. Bayless Markets, Inc.,* 128 Ariz. 438, 626 P.2d 602 (App.1981).

Because we have concluded that the existing tax liens were extinguished through merger into the title acquired by the City of Eloy, we need not consider the alternative ruling of the trial court that tax liens would be unenforceable pursuant to A.R.S. § 36–1486 while property is held by the city.

The judgment of the trial court is affirmed.

SHELLEY and FIDEL, JJ., concur.