458 P.2d 532

Leo A. GLUBAUER, aka L. Arnold Ge-Bauer; Lakeland Development Company, Inc., an Arizona corporation, Appellants,

v.

H. Cornell SMITH, Appellee.

No. 1 CA–CIV 961.

Court of Appeals of Arizona, Division 1.

Sept. 8, 1969.

Stephen W. Connors, Phoenix, for appellants.

Jennings, Strouss, Salmon & Trask, by T. Patrick Flood, Phoenix, for appellee.

MOLLOY, Judge.

The appellee, H. Cornell Smith, suing as assignee of a bank, recovered judgment on six notes executed by the appellant, Leo A. GeBauer (preferred spelling). The contentions urged on appeal are that certain setoffs should have been allowed against the $155,153.23 face value of the notes, that GeBauer was prejudiced by assertedly improper inquiry into his previous criminal convictions and civil litigation in which he had been involved, and that judgment on one of the six notes should not have been rendered against the appellant, Lakeland Development Company, Inc., which executed and was the payee of one of the notes in question.

This abortive episode in the annals of midwestern and southwestern finance centers around the East Side National Bank of Wichita, Kansas. On February 18, 1964, and for some time prior thereto, the plaintiff-appellee, Smith, was the chief executive officer of the bank. On that date, the defendant-appellant, GeBauer, a Phoenix resident with a broad range of actual and apparent business interests, was elected a director of the bank. At or near the same time, substantial accounts were established in the bank for GeBauer (there usually called Glubauer) and for several corporations which he controlled, including Lu-Bauer Petroleum Co., Inc.; Lubco Oil Refining Co., Inc.; Lubco Pipeline Purchasing Co.; the appellant Lakeland Development Company, Inc.; Bauer Drilling Company; and LuBauer Connex Petroleum Company. The great bulk of the funds in these accounts was borrowed from the bank at the request of GeBauer and on the strength of notes executed by him individually and as an officer of the various corporate borrowers (with the exception of one note, payable to one corporation, which was individually guaranteed by GeBauer).

Although GeBauer apparently indicated on various occasions that the various loan accounts would be more or less regularly reduced by repayments, repayments were not in fact forthcoming. Since GeBauer could not remain a director of the bank if loans to his interests were in default, the loans were frequently renewed, at which times GeBauer would execute new notes replacing those previous executed. Checks were sometimes drawn on accounts with insufficient funds. To cope with all these ad-

justments and irregularities, "reserve accounts" were created by the bank with respect to the various accounts, and Smith was given authority to transfer funds from one account to another to maintain them and the loan accounts in some semblance of conformity with applicable rules and regulations. Smith's summary of this *modus operandi* and the reasons for it are as follows:

"Mr. Glubauer came to the bank to borrow money. At no time, to my recollection, did he ever place any sizable deposit in the bank of his own money. The only money he had, therefore, was the money he borrowed from the bank.

"He had several accounts. He was increasing his credits in the bank to the amount of credit that was issued to him.

"The proceeds of the notes were credited to the proper department or proper company that he had, and since the balances left that he didn't check out were very small, he had notes maturing and by the latter part of the fall season of '64 or early in '64 [*sic*] he usually came back to the bank to ask for renewal of the notes.

"And he had no funds with which to pay the interest on a renewal, so he asked me how he could take care of that and not make him default in the bank. No director could be in debt to the bank with a past due. They had to be current. And he recognized that.

"So, he asked our cooperation as a director, which we were privileged to have him as a director, to help him keep his account in good order. He asked how to accomplish this since he had no money of his own.

"I told him the only way was to take some small portion of the proceeds of the loan granted to him, which was done some time in '64.

"So, transfers were made from one account to the other one that he knew all about, that he authorized in a blanket authorization. He told me one day, 'Cornell, you have a perfect right and my authorization to transfer any one of my funds in any account to take care of the good standing of my account so I won't be in default.

\* \* \* \* \* \*

"He said he was traveling twenty-five days a month and he couldn't afford to be, for us to seek communication with him, if we couldn't reach him. And so many transfers were made from one account to another one for that purpose, to have a small deposit in his account, so charges against his accounts could be paid. He did have a number of checks coming through on certain accounts that couldn't be paid because of insufficient funds.

"That is the reason for our handling his accounts the way we did."

Smith also gave the following testimony with respect to the reserve accounts:

"And I said [to GeBauer], 'The only way fair to you and appropriate would be to take a small sum out of the proceeds of every loan granted to you from now on', which would be the latter part of the fall season of '64, I imagine, 'And set it aside in a reserve account. Then you would have money to pay'—either the miscellaneous items that came through to be charged to his account and some money to pay renewal fees and interest charges on the renewal of the notes.

"Q [by counsel] Did you personally or the East Side National Bank ever take any monies from the reserve account for your personal use or the bank's personal use other than legitimate obligations or bank charges?

"A We certainly did not."

The notes sued upon are the last batch of renewal notes, executed by GeBauer in June and July of 1965. The notes total $155,153.23, the amount sought by plaintiff, plus interest as provided. GeBauer admitted execution and delivery of the notes to the bank. The notes were assigned by the bank to Smith when he sold his interest in the bank in October, 1965. Additional facts will be referred to in connection with the various points raised.

■ Findings of facts were neither requested nor rendered, and in those circumstances it is presumed that the trial court found every fact necessary to sustain its judgment which may reasonably be adduced from the evidence. Silva v. DeMund, 81 Ariz. 47, 50, 299 P.2d 638, 640 (1956); Upton v. East-West Realty Co., 81 Ariz. 58, 60, 299 P.2d 646, 647 (1956).

The appellant GeBauer first contends that appellee's judgment should have been reduced by some $15,000 because appellee was unable to produce canceled checks or other withdrawal slips from the bank's records showing disposition of that alleged sum of the total loan proceeds borrowed by GeBauer for himself and his companies. GeBauer's basic assertion in this connection is that appellee manipulated the various GeBauer accounts in such a way that neither GeBauer nor his corporations received the benefit of the funds for which there were no checks or other withdrawal memoranda.

Appellee did produce, however, besides the notes sued upon, detailed bank records of each of the GeBauer accounts, which show deposit of the amounts loaned and disposition of the funds. Copies of periodic statements were regularly sent to GeBauer or his corporations. GeBauer assertedly kept a "machine bookkeeping" system for his various enterprises and the evidence showed that he and his enterprises enjoyed the assistance of one or more accountants.

■■ Production of a properly executed note, valid and unsatisfied on its face, makes a prima facie case. Burke v. Gottfried, 7 Ariz.App. 96, 98, 436 P.2d 488, 490 (1968). It then becomes incumbent upon the party liable thereon to establish a defense if he can. Id. If these principles are ever subject to exception or qualification, they are not in this case. It was clearly established that GeBauer borrowed substantial sums of money which he did not repay. It was likewise established that GeBauer and his corporate interests got the benefit of the vast bulk of the funds borrowed. The legality or illegality of the banking practices revealed is not before us. It is clear, however, that GeBauer invited the very "manipulation" of which he now complains. The evidence does not disclose any breach of trust on the part of appellee. With respect to those funds for which there are no canceled checks or other memoranda, there was no affirmative showing by GeBauer that his interests failed to get their benefit; there is only the lack of "back up" evidence to support the bank records which show disposition of all funds. On that state of the record, we think the notes carry the day for appellee.

GeBauer's second contention is that he should have received credit for a note in the amount of $79,500 executed by one Hudson and payable to GeBauer which he placed in the bank's possession. GeBauer asserted at the trial that he gave the note to appellee for safekeeping and not as security for his outstanding loans. Appellee testified, to the contrary, that the note was given to him by GeBauer as security for the payment of all of GeBauer's loans. The note was endorsed by GeBauer and placed in the bank's own safety deposit box or vault. The note was not yet due and payable at the time of trial.

■ The judgment denying relief on GeBauer's counterclaim implies a finding that the note was given by GeBauer as security. The conflict in the evidence was clearly one for resolution by the trial judge. Since the note was found to have been given as security, GeBauer was not entitled to return of the note until his debt was satisfied. See Smith v. Mangels, 73 Ariz. 203, 240 P.2d 168 (1952). There was no evidence adduced at the trial to the effect that the note was given in payment of any of the notes sued upon or their underlying obligations, as is now suggested by GeBauer, and plainly GeBauer was not entitled to setoff the $79,500 note against the debts for which it was security.

The third setoff claimed is in the amount of $4,000 for money allegedly paid to appellee for 100 shares of stock in the East Side National Bank and not received.

In order to become a director of the East Side National Bank, GeBauer was required to own at least 100 shares of its common stock. The stock had a market value at the time of $40 per share. It was agreed that appellee would sell to GeBauer the necessary qualifying shares. Having no ready funds of his own, GeBauer borrowed $10,000 from the bank, and wrote a check for $10,000 to appellee, who sold him 100 shares of stock for $4,000 on the day GeBauer was elected a director. GeBauer acknowledged receipt of the stock that day and received a certificate for the 100 shares, which was thereafter left in the bank for holding. It was originally contemplated that appellee would sell GeBauer 250 shares, worth $10,000, but appellee would not transfer the remaining 150 shares to GeBauer until the $10,000 bank loan was repaid by GeBauer. Appellee kept the remaining $6,000 paid over to him by GeBauer in a "special tax account," which drew no interest. From all of the circumstances, the trial judge could have found that GeBauer assented to this arrangement. The $10,000 loan was never repaid, and just prior to the termination of GeBauer's directorship, appellee forwarded to GeBauer his certificate for ownership of 100 shares, upon which GeBauer had received 14½ additional shares distributed in two stock dividends, and credited the $6,000 balance in the special account against the principal amount due on one of the notes sued upon. GeBauer subsequently sold the 100 shares of stock for his own benefit.

■ The amount of testimony adduced with respect to this transaction greatly exceeded its importance, at least on a dollar value basis. In one small isolated portion of appellee's testimony, there was what might arguably have been considered a reference to a second $4,000 given by GeBauer to appellee for stock. Any such second transaction was clearly and emphatically denied in all of appellee's subsequent testimony. There was no physical evidence adduced tending to show such a payment, and GeBauer's testimony on the subject was not such to compel a conclusion that the isolated testimony in question was anything other than the result of temporary confusion arising out of the dual cash receipt and accounting aspects of the same transaction. Reviewing all of the evidence on the subject, we are convinced that the record supports the decision of the trial judge denying the credit claimed.

In his cross-examination of GeBauer, appellee's counsel inquired concerning 1953 felony conviction in the State of Colorado in connection with what is described as a "confidence game." GeBauer admitted the conviction, for which he had subsequently received a pardon. Counsel also inquired concerning a 1944 felony conviction in Arizona arising out of a charge of making a false statement to obtain an F.H.A. loan. Certified transcripts of both convictions were made available to the court and GeBauer by appellee's counsel. Appellee's counsel also inquired concerning various pending or recently concluded civil claims against GeBauer. GeBauer contends that all of these inquiries were improper and prejudicial, and that his motion for a mistrial should have been granted.

■ In Arizona, a witness may be impeached on cross-examination on the basis of a prior felony conviction, unless the conviction is "* * * so remote that it cannot reasonably cast a reflection upon the witness' credibility." State v. Harvill, 89 Ariz. 340, 342, 362 P.2d 663, 664 (1961), quoting Sibley v. Jeffreys, 76 Ariz. 340, 345, 264 P.2d 831, 833 (1953); and see, generally, Udall, Arizona Law of Evidence § 67, at 103 et seq. The general law seems to be that such impeachment is proper even though the witness received a subsequent pardon. Richards v. United States, 89 U.S. App.D.C. 354, 192 F.2d 602, 30 A.L.R.2d 880, (1951), cert. denied, 342 U.S. 946, 72 S.Ct. 560, 96 L.Ed. 703, rehearing denied, 343 U.S. 921, 72 S.Ct. 676, 96 L.Ed. 1334; 3 Wigmore, Evidence § 980, p. 543 (3d ed. 1940); Udall, supra, § 67, at 104. The only case cited by appellant on the subject is Sibley v. Jeffreys, supra. In that case, the offense was committed during youth some

thirty years prior to trial. In any event, this case was tried to the court and no prejudice will be presumed. State v. Garcia, 97 Ariz. 102, 104, 397 P.2d 214, 216 (1964), and cases cited.

 Neither of the parties have cited any authority on the subject of the admissibility or propriety of inquiry into the civil litigation in which GeBauer was involved, and we have no inclination to pass upon the subject under all of the circumstances here, since it is clear to us that the inquiry, even if improper, could not rise to the level of prejudicial error in this trial to the court. The trial judge heard, from GeBauer's own lips and without objection that although his assets were within "five or ten million" of some $200,000,000 in 1964, he was without any assets at all in 1967 because he and his accountants followed a practice of disposing of all of his assets every three years. In view of such a practice and the various other financial practices and circumstances revealed by the undisputedly admissible evidence, counsel's inquiry into the pending civil litigation must be considered at worst incidental, and harmless.

The last contention to be considered is raised in behalf of the appellant, Lakeland Development Company, Inc. The evidence showed without conflict that GeBauer was president of the Lakeland Development Company, Inc., at the time the $25,000 note in question was executed by GeBauer in the corporation's behalf. Delivery as well as execution of the note was admitted in the pleadings filed by the corporation. The loan proceeds were placed in the corporation's account, but at GeBauer's direction were withdrawn and placed in the account of another corporation controlled by GeBauer. This transfer forms the factual predicate for the corporation's appeal.

As the issue is framed by Lakeland, the contention is that there was a "failure of consideration" for the note executed by GeBauer in its behalf. The argument directed to the issue so framed, however, asserts as the critical deficiency lack of proof that GeBauer had authority to bind the corporation by his acts.

"Failure of consideration" refers to the nonoccurrence of an agreed-upon exchange. See Restatement of Contracts § 274, Comments a and b. Since the loan proceeds for which the note was executed were made available to the corporation, there was plainly no failure of consideration here. Nor was there any failure to show authority on the part of GeBauer to bind Lakeland. As noted, GeBauer was concededly the president of the corporation, and for all that appears in the record, he effectively *was* the Lakeland Development Company, Inc., with sole and plenary authority over its assets and accounts. Appellee testified that the transfer was made in accordance with GeBauer's instructions. The principles of Burke v. Gottfried, *supra,* are equally applicable here.

Finding no basis for reversal or modification of the judgments rendered against GeBauer or the Lakeland Corporation, the judgments are affirmed.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.