IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

SYED BASHIR AHMED SHAH,
an individual,
*Plaintiff/Judgment Creditor/Appellant,*

*v.*

ABDUL J. BALOCH aka ZAHID BHURGI,
an individual,
*Defendant/Judgment Debtor/Appellee,*

WELLS FARGO BANK, N.A.,
*Garnishee/Appellee.*

No. 1 CA-CV 15-0812
FILED 10-12-2017

Appeal from the Superior Court in Maricopa County
No.  CV2010-013396
The Honorable Michael L. Barth, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Windtberg & Zdancewicz, PLC, Tempe
By Michael J. Zdancewicz, Marc Windtberg
*Counsel for Plaintiff/Judgment Creditor/Appellant*

The Collins Law Firm, PLLC, Mesa
By Ernest Collins, Jr.
*Counsel for Defendant/Judgment Debtor/Appellee*

Snell & Wilmer, LLP, Phoenix
By Rebekah Elliott, Carlie Tovrea
*Counsel for Garnishee/Appellee*

---

## OPINION

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Margaret H. Downie and Judge John C. Gemmill joined.[1]

---

**J O H N S E N**, Judge:

**¶1**　　　　Syed Bashir Ahmed Shah appeals the superior court's order quashing garnishment of funds Shah alleges a debtor fraudulently transferred into a retirement plan.  Because Shah's claim does not fall within the limited exceptions to the federal law barring recovery from a qualified retirement plan, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**　　　　Shah sued Abdul J. Baloch for breach of contract and fraud and obtained a judgment in 2009 for $411,505.  Attempting to collect on the judgment, Shah served a writ of garnishment on Wells Fargo Bank, N.A., as the trustee of Baloch's 401(k) account.[2]  According to the record, Baloch's 401(k) account balance is nearly $50,000; Shah alleged Baloch fraudulently transferred several thousand dollars into the account after entry of Shah's judgment against him.  Wells Fargo objected to the garnishment and the superior court quashed the writ, finding the funds in Baloch's 401(k) account exempt from garnishment under the Employee Retirement Income Security Act ("ERISA").

**¶3**　　　　Shah timely appealed the superior court's order.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and

---

[1]　　The Honorable John C. Gemmill, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution and A.R.S. § 12-145 (2017).

[2]　　We take judicial notice that Baloch filed a Chapter 7 bankruptcy in 2011.  The bankruptcy court ruled Shah's claim was nondischargeable, and that court's judgment was affirmed on appeal.

Arizona Revised Statutes ("A.R.S.") sections 12-2101(A)(4) and (5)(c) (2017) and 12-120.21(A) (2017).[3]

## DISCUSSION

**¶4** Under Arizona's version of the Uniform Fraudulent Transfer Act, a creditor may garnish a transfer made with "actual intent to hinder, delay or defraud" the creditor. A.R.S. §§ 44-1004(A) (2017), -1007(A)(1) (2017); *see Sackin v. Kersting*, 105 Ariz. 464, 465 (1970). Baloch, however, argues state law prohibits a judgment creditor from executing on or attaching a judgment debtor's retirement account. *See* A.R.S. § 33-1126(B) (2017) (exempting from attachment "money or other assets payable to a participant in or beneficiary of, or any interest of any participant or beneficiary in, a retirement plan [qualified under federal law]"). But with few exceptions, none of which apply here, ERISA preempts state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a) (2017). Thus, ERISA preempts A.R.S. § 33-1126(B) as applied to a qualified pension plan. *In re Hirsch*, 98 B.R. 1, 2 (Bankr. D. Ariz. 1988) ("A.R.S. § 33-1126(B) would undoubtedly be pre-empted in a state court proceeding wherein creditors seek to enforce their claims against an ERISA pension plan."), *aff'd sub nom In re Siegel*, 105 B.R. 556 (D. Ariz. 1989); *see Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829–30 (1988) (state garnishment provision pertaining to employee pension plan preempted by ERISA).

**¶5** ERISA grants comprehensive protections to qualified pension plan participants and beneficiaries.[4] At issue in this case is a rule that, to qualify, a pension plan must "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1) (2017). The corresponding Treasury Regulation defines "assignment" and "alienation" to include "[a]ny direct or indirect arrangement . . . whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." Treas. Reg. § 1.401(a)-13(c)(1)(ii) (2017); *see Hoult v. Hoult*, 373 F.3d 47, 54–55 (1st Cir. 2004) (anti-alienation regulation entitled to deference under *Chevron,*

---

[3] Absent material revision after the relevant date, we cite a statute's current version.

[4] We review *de novo* the superior court's determination that federal law exempts funds in an ERISA-qualified account from a writ of garnishment. *See Nat'l Collegiate Student Loan Trust 2007-2 v. Rand*, 241 Ariz. 169, 171, ¶ 7 (App. 2016).

*U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)). Baloch's retirement plan undisputedly is a qualified plan under 26 U.S.C. § 401(k) (2017) and contains the required anti-alienation provision.

**¶6**          ERISA's anti-alienation bar generally prohibits a creditor from garnishing a qualified plan to collect on a judgment against a plan participant. In *Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 367 (1990), a labor union sought a constructive trust on the pension benefits of an official who had embezzled from the union. The Supreme Court likened a constructive trust to a garnishment, and noted that the anti-alienation provision "erects a general bar to the garnishment of pension benefits from plans covered by" ERISA. *Id.* at 371. As Wells Fargo argues, under this principle, funds Baloch deposited into his 401(k) plan are not subject to garnishment because they are or may become payable to him as a benefit.

**¶7**          Shah argues funds that a participant fraudulently conveys into a 401(k) account may be garnished because such a transfer is void as a matter of law. *See also Sackin*, 105 Ariz. at 465. But under *Guidry*, even a fraudulent transfer of funds by a participant into his or her qualified plan may not be recovered unless a statutory exception applies.[5] A bankruptcy court applied this principle in *Matter of Loomer*, 198 B.R. 755 (Bankr. D. Neb. 1996), ruling that even if a fraudulent transfer could be proved, the ERISA restraint on alienation precluded enforcement of a judgment against the retirement plan. *Id.* at 759–60; *see Majteles v. AVL Corp.*, 696 N.Y.S.2d 748, 749, 751–52 (Sup. Ct. 1999) (judgment creditor barred from recovering funds insolvent company fraudulently conveyed to company's pension plan).

**¶8**          The cases Shah cites do not apply under the circumstances here. *Wagner v. Galbreth*, 500 B.R. 42 (D.N.M. 2013), and *In re Vaughan Co., Realtors*, 493 B.R. 597 (Bankr. D.N.M. 2013), both concerned pension plans that had invested in what turned out to be a Ponzi scheme. *See Wagner*, 500 B.R. at 45–46; *Vaughan*, 493 B.R. at 601–03. In unwinding the scheme, a bankruptcy trustee sought to recover transfers the perpetrator had made to the pension plans as returns on their investments before the fraud was discovered. *See Wagner*, 500 B.R. at 45; *Vaughan*, 493 B.R. at 601–03. In both cases, the court held the ERISA anti-alienation provision did not bar

---

[5]          There are two statutory exceptions to the anti-alienation rule, neither of which is at issue here. *See* 29 U.S.C. § 1056(d)(2) ("voluntary and revocable assignment of not to exceed 10 percent of any benefit payment") and (d)(3)(A) (qualified domestic relations order).

recovery from the pension plans. *See Wagner*, 500 B.R. at 49; *Vaughan*, 493 B.R. at 607–08. But in approving the trustee's recovery of the transfers, the courts did not hold the ERISA anti-alienation rule generally excepts fraudulent conveyances. Instead, they reasoned based on Treas. Reg. § 1.401(a)-13(c)(1)(ii) that the anti-alienation bar did not apply because the transfers to be unwound there were between the perpetrator and the respective trustees of the pension plans, not between the perpetrator and a plan participant. *See Vaughan*, 493 B.R. at 606 (plan trustee contracted with fraudulent investment company as trustee; "no evidence that [he] acted in his capacity as a beneficiary or participant"); *Wagner*, 500 B.R. at 48.

¶9            As noted, the regulation defines "assignment" and "alienation" to include "[a]ny direct or indirect arrangement . . . whereby a party acquires from a participant . . . a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant." Treas. Reg. § 1.401(a)-13(c)(1)(ii). Under this provision, whether funds fraudulently transferred to a pension plan may be recovered depends on the circumstances of the transfer giving rise to the claim. The anti-alienation rule did not bar recovery in *Vaughan* and *Wagner* because the claims there arose out of investment transactions between the trustees of the two plans and the perpetrator, who was otherwise a stranger to the plans. By contrast, Shah has a judgment against Baloch, a plan participant, and seeks to enforce that judgment against Baloch's transfers into the plan.[6]

¶10           Shah further cites *Batiza v. Superfon*, 175 Ariz. 431, 436 (App. 1992), in which the court held the ERISA anti-alienation rule did not bar a claim alleging that a pension plan had fraudulently transferred assets. As in *Wagner* and *Vaughan*, however, the underlying claim in that case was

---

[6]        Shah argues that *Vaughan* relied on other cases "that have permitted recovery of fraudulent transfers from ERISA plans." We have reviewed each of the cases *Vaughan* cites as support for its statement that "[a]lthough only a handful of courts have examined this issue, the majority permitted bankruptcy trustees to use the avoiding power of [bankruptcy law] to recover from ERISA plans." *See* 493 B.R. at 607 (citing *In re Goldschein*, 241 B.R. 370, 379 (Bankr. D. Md. 1999), *In re CF&I Fabricators of Utah Inc.*, 163 B.R. 858, 878 (Bankr. D. Utah 1994), *Velis v. Kardanis*, 949 F.2d 78, 82 (3d Cir. 1991), and *In re Key Commc'ns, Inc.*, No. 93-2899, 1994 WL 242643, at *1 (5th Cir. May 17, 1994)). Although some of the cited cases expressed in *dictum* the view that a fraudulent transfer might be recovered from a plan, none of the cases actually permitted a creditor of a participant in a qualified plan to recover an alleged fraudulent transfer by the participant to the plan.

against the plan itself (for breach of contract), not a claim against a beneficiary or participant. *Id.* at 432–33, 435.

¶11        Shah argues public policy requires us to except fraudulent transfers by plan participants from the anti-alienation rule. But *Guidry* rejected—in no uncertain terms—the suggestion that courts may create equitable exceptions to the anti-alienation rule. *See Guidry,* 493 U.S. at 376 ("The identification of any exception" to ERISA's prohibition of the assignment or alienation of pension benefits "should be left to Congress."); *see also Loomer*, 198 B.R. at 760 ("Courts are forbidden from carving out exceptions to the ERISA alienation restriction."). *Guidry* held that because Congress has enumerated specific exceptions to anti-alienation, courts may not create other exceptions, even for criminal conduct, and even when the result is that funds are rendered immune from otherwise valid collection efforts:

> Nor do we think it appropriate to approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits. [29 U.S.C. § 1056(d)] reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

> As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. . . .

> Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear.

493 U.S. at 376–77; *see Patterson v. Shumate*, 504 U.S. 753, 760 (1992) ("Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar."); *see also Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 19–20 (1979) ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").

¶12 As in the cases cited above, the result here is distasteful. *Guidry*, 493 U.S. at 377; *Loomer*, 198 B.R. at 763. The superior court order that we are affirming leaves Shah unable to satisfy his judgment from funds Baloch allegedly fraudulently transferred to his pension plan to avoid the judgment. But the case authorities interpreting 29 U.S.C. § 1056(d) do not permit exceptions that Congress has not authorized.

## CONCLUSION

¶13 For the reasons stated, we affirm the superior court's order quashing the writ of garnishment. Wells Fargo and Baloch each seek attorney's fees pursuant to A.R.S. § 12-1580(E), under which a prevailing party in a garnishment "may be awarded costs and attorney fees in a reasonable amount determined by the court." We deny both requests for attorney's fees, but award them their costs on appeal pursuant to A.R.S. § 12-342(A) (2017).



AMY M. WOOD • Clerk of the Court
FILED:  AA

7